OaRUtheRS; J.,
delivered the opinion of the court.
The only question presented in this case, is, whether non-residents are embraced in the provisions of the act *50 of 1821, cb. 22, authorizing suits to be brought by poor persons, without giving security for costs.
¥e cam see no reason for the exclusion of non-residents from the benefit of this act. They are not excluded in terms or by any fair construction. It would be against tliat comity and good neighborhood, which should exist aud be fostered by the several States, toward the citizens of each other, to make a distinction between them as to the mode of asserting their rights. Courts should not be open to one and closed against the other. ~We would not give such a construction to any act of our legislature, unless constrained to do so by its express provisions, or some rule of clear and necessary policy or fixed principle of international law. There is nothing in the act indicating an intention to confine its benefits to citizens of our own State. The language, used is general, “any person who shall take the oath hereinafter prescribed.”
The case of Hawkins vs. Pearce, 11 Hump., 44, in which the benefits of the acts of 1820, ch. 11, and sundry others on the same subject down to 1846, ch. 169, exempting certain property from execution for debt, was certainly correctly decided. But the reason and principle of that case do not apply to this. In most of those acts, perhaps all but the last, the provision is expressly for citizens of this State. But independent of this fact, a sound policy would so limit them. Their object is to secure benefit or the means of living, to the families of those of our own people, who by misfortune or improvidence become involved beyond their ability to pay. It was thought better, and more in accordance with humanity, and the interests of the State, that creditors should *51 lose their just claims to that extent, than that the wives and children of unfortunate debtors should be reduced to entire destitution, and possibly become a charge to the community. These -reasons and objects could not be made properly to apply in the case of citizens of other States, who might be indebted to ours. We are under no obligation to make provision for them. They must look to their own governments for protection.
■ But here the question, we think, is certainly different. It is whether our courts shall be open to non-residents for the- assertion of their rights on the same terms as our own citizens. Shall a stranger, because he is poor and friendless, be denied the aid of our laws in the recovery or defence of his rights? We think not. Such could not have been the intention of the legislature.
Let the judgment of the court below be reversed, and the cause remanded.